## DANIEL BUTLER *versus* SYLVANUS HUBBARD *et al.*

An indenture of apprenticeship entered into by overseers of the poor, which does not contain a provision for the instruction of the minor in reading, &c., pursuant to *St.* 1793, *c.* 59, § 4, is void in regard to all the parties.

An indenture by which selectmen and overseers bound a minor over fourteen years of age as an apprentice, (instead of the minor's binding himself,) and in which it was not stated that he had no father, mother or guardian within the commonwealth, was held not to be within *St.* 1794, *c.* 64, § 1.

Where a stranger, having no authority over a minor, undertakes to bind him as an apprentice, and covenants for his faithful service, the contract is not valid at common law as to either of the parties.

THIS was an action of covenant broken, upon an indenture of apprenticeship, made in 1819, by which the defendants, selectmen and overseers of the poor of Williamsburgh, bind " George Strong, aged fifteen years on the third day of September last, son of Gilson Strong lately of Willamsburgh," to D. Butler, paper-maker, to learn his trade and to serve him as an apprentice from the day of the date until the 3d of September, 1825, and the defendants, " in their said capacity," covenant, among other things, that during the term the apprentice shall not by day or night absent himself from the service of his master. The plaintiff covenants only to teach and instruct, or cause the apprentice to be instructed, in the art, trade, or calling of a paper-maker, and to find and provide for him good and sufficient meat, drink, washing, lodging and clothing during the term, and a freedom suit at the expiration of the apprenticeship. The apprentice, " consenting to be bound," covenants that he will keep and perform all the covenants made by the overseers. The indenture was signed and sealed by the plaintiff, the defendants, and the apprentice. The breach of covenant alleged was, that the apprentice, on the 1st of January 1822, and ever since, had absented himself from the plaintiff's service. The defendants, after oyer, demurred generally.

*Clark,* in support of the demurrer, said that as it was apparent on the face of the indenture, that the defendants intended only to bind themselves as overseers, they were not personally liable. *Powers* v. *Ware,* 2 Pick. 451 ; *Thayer* v.

Sept. 25th

Butler
*v.*
Hubbard.

*Wendell,* 1 Gallison, 37 ; and the opinion of *Sedgwick* J. ın *Sumner* v. *Williams,* 8 Mass. R. 171.

Overseers of the poor, in binding out an apprentice, are agents of the public and not of their particular town, and on this ground likewise the covenants of the defendants are not personally binding. *Macbeath* v *Haldimand,* 1 T. R. 172 ; *Hodgson* v. *Dexter,* 1 Cranch, 345.

The indenture is void, because it does not pursue the statute. It does not state that the parents of the apprentice were settled in Williamsburgh, and were actually chargeable to the town, or were unable to maintain their child, &c. *St.* 1793, *c.* 59, § 4.

The indenture is void too for want of a consideration. If the action were brought by the defendants against the plaintiff, it would fail on that ground, and there must be mutuality. The consent of the minor to be bound constitutes no consideration, for that is void. Com. Dig. *Enfant, C* 2. As the want of consideration appears on the face of the indenture, the maxim that a deed imports a consideration cannot apply.

*Billings,* on the same side, added, that upon comparing the indenture with *St.* 1794, *c.* 64, § 1, it would appear that the binding was not in pursuance of that statute.

*L. Strong,* for the plaintiff. If one contracts in the name and behalf of another, and within the scope of his authority, the principal is held and not the agent. *Mann* v. *Chandler,* 9 Mass. R. 335 ; *Long* v. *Colburn,* 11 Mass. R. 97. But if he contracts in his own name, though on behalf of another, (*Appleton* v. *Binks,* 5 East, 148 ; *Barry* v. *Rush,* 1 T. R. 691 ; *Tippets* v. *Walker,* 4 Mass. R. 595 ; *Bickford* v. *Page,* 2 Mass. R. 455 ; *Sumner* v. *Williams,* 8 Mass. R. 162 ;) or without authority, (*Hatch* v. *Smith,* 5 Mass. R. 52 ; *Thacher* v. *Dinsmore,* ibid. 299 ; 8 Mass. R. 189 ;) he is personally held. And this, though he may have contracted explicitly *en auter droit,* and neither party at the time may have supposed him to be liable. The case of a publ o agent, acting in that character, is ordinarily an exception. If however he negatives the presumption of authority, or obviously intends to bind himself, he is personally liable.

4 Mass. R. 597 ; *Freeman* v. *Otis*, 9 Mass. R. 272 ; 1 Mass. R. 217 ; 8 Mass. R. 212.

But it is objected, that nothing more is stipulated by this 'ndenture, on the part of the defendants, than selectmen and overseers are authorized by law to stipulate, and therefore they have contracted as public agents and come within the exception. To this we answer, 1. That the *St.* 1793, *c.*59, does not authorize any binding without a provision for the instruction of the minor in reading, &c. — 2. That by *St.* 1794, *c.* 64, the selectmen are merely empowered to express their approbation of the contract by which a minor binds himself ; — 3. That selectmen and overseers of the poor are not public agents within the spirit of the exception ; — 4. That if they were, authority to bind others to service gives no authority to covenant that such others shall be faithful ; — and 5. That the covenants actually made (one of which is that the apprentice shall not marry during the term) are not such as they were authorized to make, if entitled in their official character to covenant at all.

Again, it is objected that the statute of 1794 authorizes minors to bind themselves with the approbation of the selectmen, not selectmen to bind minors, even with their consent. Suppose this to be true, the consequence is, not that the deed is void, but that the minor himself is not held, though ne defendants are. The binding however is substantially good under the statute, although the indenture is not technical n its form. The stipulations on the part of the master were reasonable and satisfactory in the view of the selectmen, and the minor, having assented to their covenants and engaged to observe them, was himself legally bound as an apprentice ; and had he continued to serve his master faithfully until he was twenty-one, it could not be pretended that the plaintiff would have been absolved, upon any principle of law or equity, from the performance of *his* engagements. At any rate, the indenture is valid against the defendants, as a contract at common law. *Day* v. *Everett*, 7 Mass. R. 148 ; *Matter of Mc Dowles*, 8 Johns. R. 255.

The last objection is, that it does not appear that the minor was without father, mother or guardian, within the common-

*Butler*
*v.*
*Hubbard.*

**253**

wealth, and that the defendants therefore had no authority to interfere. According to our views of the subject, it is altogether immaterial in what character the defendants acted Suppose they were mere strangers, who could be prejudiced by their contract? Not the minor, for if it was injurious to him, he was not bound by it; and it is not competent for the defendants to aver any fact inconsistent with the authority which they have assumed to possess. If the Court however should deem an averment that the minor was without father, &c., important, the plaintiff would wish for leave to amend.

PUTNAM J. delivered the opinion of the Court. There is no doubt concerning the position which is stated by the counsel for the plaintiff, that one person undertaking to contract in the name and behalf of another without any authority s personally bound, if there be not something in the contract itself which destroys its validity. The contract which the plaintiff would enforce is clearly within the exception to the general rule. It is void upon its face, because it is not made according to the provisions of the statute. It purports to be an indenture between the defendants, as selectmen and overseers of the poor of Williamsburgh, of one part, and the plaintiff, of the other part, for the binding of a minor of the age of 15 years, to serve the plaintiff as an apprentice until he should be twenty-one years of age.

By the statute of 1793, c. 59, § 4, the overseers are empowered to bind out, by deed, as apprentices, to be instructed and employed in any lawful art, trade or mystery, or as servants, to be employed in any lawful work or labor,[1] children whose parents are lawfully settled in and become actually chargeable to their town or district, — also, whose parents so settled, shall be thought by the overseers to be unable to maintain them, whether they receive alms or not, provided they are not taxed, — to any citizen of this commonwealth; males, until they come to the age of twenty-one years, and females, until they come to the age of eighteen or are married:

---

[1] Where a poor child is bound an apprentice, by the overseers of the poor to do any work in which his master may see fit to employ him, this is understood to mean any lawful work. *Bowes v. Tibbets,* 7 Greenl. 457.

Butler
v.
Hubbard.

" Provision to be made in such deed for the instructing of male children, so bound out, to read, write and cipher, and of females to read and write, and for such other instruction, benefit, and allowance, either within or at the end of the term, as to the overseers may seem fit and reasonable." [1]

Upon examination of the indenture, it does not appear that Gilson Strong, the father of the minor, was chargeable to the town of Williamsburgh, or that the overseers thought that he was unable to maintain his child.    But if that objection should be waived, there is another which is fatal to the validity of the indenture.    There is an omission of any provision for the instruction of the minor in reading, writing or ciphering. The statute is peremptory upon that point.    The children who are taken from their parents and put out to learn trades, or as servants, shall at all events be taught to read and write, and the boys to cipher ; and the overseers may also contract for any further benefit or allowance for them within or at the end of the term, which they may think reasonable.    Now the parties who are before us, undertake to control this minor, as an apprentice, without any stipulation for instruction, excepting only in the art of paper-making.    This is directly contrary to the wise and benevolent provision of the statute, which intends that apprentices and servants, at the expiration of their term of service, shall have such an elementary knowledge of letters and of arithmetic as may qualify them for future usefulness.    The plaintiff having never undertaken to give such instruction, could not lawfully restrain the minor in his service, or reclaim him if he should have left it.    Nor can he have any remedy against the defendants for doing what the plaintiff, as well as the defendants, knew to be unlawful.    We say knew, because all the citizens are presumed to know the law.    Perhaps the parties did not advert to the provisions of the statute. It may be that a printed blank was used which did not contain this provision, and that it was a mere mistake.    However that may have been, we are all clearly of opinion that the contract is void upon its face.

If the defendants are to be considered as acting in their                    **255**

---

[1] See Revised Stat. c. 80, § 7.

individual, and not in their official capacities, it will not cure the difficulty. It would be a contract in restraint of the liberty and rights of the subject. Suppose the undertaking had been by the defendants personally, and without any authority that the plaintiff might shut up the minor in prison until he should be twenty-one ; or that he might beat the minor when he thought the minor deserved chastisement ; — it would upon its face be illegal. It would not be obligatory upon the defendants, and would not give any right to the plaintiff to beat or imprison the subject of the bargain.[1]

The *St.* 1794, *c.* 64, § 1, does not apply to this case. It provides that all minors of fourteen years and upwards, may be bound by deed, as apprentices or servants, by their father, and in case of his decease, by their mother or guardian ; and any such minors having no father, mother or guardian within the commonwealth, may, by deed, bind themselves, with the approbation of the selectmen or the major part of them, of the town where they reside. Now it does not appear in the deed, whether this minor had any father, mother or guardian in the commonwealth. All that is said upon that matter is, that he is called the son of Gilson Strong, lately of Williamsburgh in the county of Hampshire. Now although it appears that the minor signed and sealed the deed, yet it does not purport to be a binding *by himself*, but to express his consent *to be bound* in manner aforesaid. The parties do not appear to have acted at all in reference to this statute, but to the statute of 1793, which they disregarded or violated, as we have seen, in a most essential point.

This case differs from *Day* v. *Everett*, 7 Mass. R. 145. In that case the Court held, that a father might lawfully assign to another the services of his son during his minority, and that the contract should be considered as good at the common law, although it had not pursued the requisitions of the statute. But these defendants individually had not at common law a right to assign the services of the minor whom they undertook to bind. An undertaking by them, **256** without authority, to subject the minor to servitude or labor,

---

[1] See *Nickerson* v. *Easton*, 12 Pick. 110.

we think would be merely void. In *Day* v. *Everett* the father had a right to the services, and authority to assign them at common law. In the case at bar the defendants individually had no right to the services, and no right to assign them at the common law. It is not anaiogous to an undertaking of one as surety for another for the performance of a lawful contract ; but this is an original stipulation, under color of law, but really without authority, and in restraint of personal liberty. Putting the contract into its intended application and effect, it would be, that the plaintiff might take the minor and make him work, and punish him in case of his refusal to labor at the plaintiff's trade. It could not, we think, be maintained by any principle of the common law. The fallacy of the argument for the plaintiff consists in the supposed good intentions on the part of the defendants, and the supposed benefit which might arise to the minor from this voluntary interference of strangers. It seems to be conceded, that the minor would not be bound, and we can see no good reason why the contract, being between strangers to the minor and tending to bring him under actual subjection, should not be void as between themselves.

In regard to the supposed admission of the defendants by their demurrer, we cannot think, that by placing the whole matter for the consideration of the Court, they are estopped to deny the conclusion which the plaintiff would draw from the whole record. It seems not to be contended, that in fact the provisions of the statute have been followed. So the defendants are not justified in their official characters. If not, then the defendants are acting upon their own assumed power over the personal rights and freedom of the minor. A contract with such aspects cannot be supported.

Nor do we think the plaintiff could by any amendment of his declaration make the case better for himself. If, as is suggested in the close of the argument, the minor had no father, mother or guardian in the commonwealth, it would follow that the parties were altogether mistaken in regard to the statute by which they obviously intended to be governed. The defendants would then be left as unauthorized individuals attempting to control the liberty and course of life of

257

the minor; and the plaintiff must be considered as partaking in that illegal transaction. We think that the law will not afford a remedy to either against the other in such a case.

The judgment must be entered up for the defendants upon the demurrer.